## STATE *v.* F. D. CADIGAN.

January Term, 1901.

Present: TAFT, C. J., MUNSON, START, WATSON and STAFFORD, JJ.

Opinion filed May 17, 1901.

*Construction of statutes—V. S. Chap. 175—*In its reference to firms organized under the laws of another state, V. S. Chapter 175 means what it literally says and refers to such firms irrespective of the residence of their members.

*Constitutional law—V. S. Chap. 175—Fourteenth Amendment, Clause 1 —Declaration of Rights, Articles 1, 4, 7—*Chapter 175 of the Vermont Statutes, in discriminating between agents of loan and investment firms organized under the laws of this state and agents of such firms organized under the laws of other states, making the act

of the latter unlawful while the act of the former in the same circumstances would be lawful, contravenes constitutional provisions securing to all the equal protection of the laws.

INFORMATION in four counts under V. S. 4133. Heard on demurrer to the information, Windsor County, December Term, 1899, *Tyler,* J., presiding. The demurrer was overruled, the information held sufficient and the respondent adjudged guilty. The respondent excepted.

*Charles Tarbell,* State's Attorney, for the state.

*Dillingham, Huse & Howland* for the respondent.

STAFFORD, J. Cadigan is informed against for acting as agent of a partnership organized under the laws of the state of New York, in selling certain municipal bonds here, without said partnership having complied with the statute of this state requiring firms organized under the laws of other states to procure a license from the inspector of finance, to file a bond with him, and to submit to his examination, before conducting such business here. The case was heard below on demurrer to the information, which was held sufficient. The decision depends upon the constitutionality of sections of chapter 175 of Vermont Statutes, entitled "Loan and Investment Companies," which may be summarized as follows:

The first section declares that every corporation organized under the laws of this state for the purpose of selling its own choses in action, or of selling, guaranteeing, or negotiating those of other persons or corporations as investments or as a business shall be under the supervision of the inspector of finance. V. S. 4132.

Then follow sections under the division title "Foreign Corporations:" but in all these, when the word "corporation" is used it is supplemented by the words "company or firm," the phrase in full being, "such corporation, company or firm or-

ganized under the laws of another state." No person, it is declared, shall act in this state as agent or representative of such corporation, company or firm, or sell, offer for sale, or negotiate choses in action, owned, issued, negotiated, or guaranteed by it, unless such corporation, company or firm has filed with the inspector of finance a bond to the state for such an amount as he requires, not more than ten thousand dollars and not less than five hundred dollars, with such sureties or security as he may approve, conditioned for the making of such returns as may be required and the payment of all taxes that may be assessed against it, and in all things to comply with the laws of this state; and has submitted itself and its financial condition to an examination by the inspector in such manner as to enable him to make a report thereof, as specified in this chapter, "in case of like corporations in this state." V. S. 4133.

The inspector is required to notify the state's attorney of violations of this chapter, and such are made punishable by a fine of not less than fifty dollars nor more than one thousand dollars. V. S. 4134.

When it appears to the inspector that such corporation, company or firm is conducting its affairs in a safe and authorized manner, and has filed the required bond, he shall issue to it a license good until the first day of the next January; and within thirty days of the date of its license it shall file in his office its certificate stating the names and addresses of all who are to act as its agents in this state, which certificate shall be amended by it in case of any change. V. S. 4135.

Before it can do business here it must make the inspector its attorney upon whom process may be served. V. S. 4136.

It shall file semi-annual reports under penalty of having its license revoked. V. S. 4138.

If it conducts its business in an unsafe or unauthorized manner the inspector shall direct it to desist, and to at once provide for the safety and security of all such business transactions.   V. S. 4139.

If it fails to comply with such order or to report when requested, or if it appears to the inspector that it is unsafe or inexpedient for it to continue business, he shall revoke its license.   V. S. 4139.

All services and expenses under this chapter shall be approved by the state auditor and paid by the licensees upon an equitable apportionment to be made by the inspector.   V. S. 4142.

The respondent by demurring admits that he did the thing prohibited by the statute—for no question is raised as to the form or sufficiency of the information except as hereinafter stated—but he says it was no offense, because he was acting as agent for citizens of New York, who, as such, were entitled to all the privileges and immunities of citizens of Vermont; that citizens of Vermont might lawfully do by themselves or agent all that he did in behalf of his principals; consequently it was lawful for him to do the same.   The statute is thus challenged as in contravention of U. S. Const. Art. 4, sec. 2: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."   It is not claimed that the citizenship of the respondent is of any materiality under the statute, but that the citizenship of his principals is material; that the statute is aimed at firms whose members are residents of other states; and that it requires of such firms what it does not require of resident firms.

It will be observed that the statute itself says nothing about citizenship or residence.   The test is, whether the firm was "organized under the laws of another state."   It is alleged that the respondent's firm was organized under the laws of

New York; but its members may all be citizens of Vermont. On the other hand, if a firm is organized under the laws of Vermont, it is exempt from these requirements even though all of its members resided in New York. So, looking at the letter only, there is no distinction between citizens of Vermont and citizens of other states. But the respondent, while taking note of this literal reading, says that the law should be tested by its intent and effect, both of which, he thinks, show clearly that it does discriminate against non-residents. In the first place, he says, the mere fact that a common law partnership—and the respondent's firm is not alleged to be anything more—was organized in some other state instead of in Vermont, could afford no rational basis for a distinction. It would be no protection for citizens of this state that citizens of other states came here, upon our soil, merely to make their contract of partnership, and then returned to their own states. Nor would the people of Vermont be deprived of any protection by the fact that residents of this state, doing business here, had entered into their partnership under the laws of New York. So, he says, we must look deeper to find the real intent, and that it is made plain by three special provisions of the chapter itself: (1) The requirement that a bond shall be given to secure the payment of taxes, indicating that the members are not within reach like residents; (2) the requirement that such firms make report as required of "like corporations in this state;" and (3) the condition that they appoint the inspector of finance their attorney, upon whom process may be served, a thing unnecessary in the case of residents. Moreover, it is said, while there might be such cases as those just now supposed,—citizens of Vermont organizing firms in some other state, and vice versa, —they would be very exceptional, and in the great majority of instances firms organized under the laws of Vermont would be composed of residents of Vermont, while firms organized

under the laws of other states would be composed of residents of such other states. There is some force in these contentions, and indeed it is freely conceded by the state's attorney, that the act was intended to and does operate against non-residents, really discriminating against firms whose members are not residents of Vermont; and such discrimination is defended as a fair exercise of the police power.

Thus, we see, the respondent treats the statute as discriminating against non-residents in order to find a basis for his contention that it contravenes the Federal constitution in the respect referred to; and the state treats it as discriminating against non-residents in order to find a basis for its contention, that it is a police regulation for the protection of the people of Vermont against strangers. But we are unable to adopt this construction. The statute itself takes no account of residence. In the very case before us the respondent's principals may be residents of Vermont. The respondent's neighbor, engaged in the same business, may be acting for a firm organized under the laws of this state, every one of whose members may be a resident and citizen of some other state. The test of the respondent's action is whether his principals formed their partnership under the laws of Vermont. If they did, his act was lawful; if they did not, it was unlawful. To the argument that the legislature intended to exclude firms whose members were non-residents, it is a sufficient answer, that if that is what the legislature meant that is what the legislature should have said.

The question then arises, whether the test laid down is a valid one. Does the bare fact that the partnership was formed under the laws of this state, rather than of some other, afford a rational basis for distinction in determining the lawfulness of its agent's act in doing business for it here? Is the fact that it is organized here any protection to the people of this state ?

Does the fact that it was organized elsewhere lessen their pro-tection? It is difficult to see how. The laws of Vermont make no requirement of firms organized here to transact this kind of business. The provisions upon that subject relate only to corporations. The agent of a firm organized under the laws of Vermont might lawfully do all that the respondent did. The agent of individuals residing in Vermont or anywhere else might lawfully do all that he did. But if such individuals had agreed to act as partners instead of separately, and made that contract in some other jurisdiction, their agent could not act for them here without committing a crime. The forma-tion of the partnership would not relieve them from individual liability to creditors, nor make the firm a distinct legal entity like a corporation, yet it would make it a crime for the agent to do for them jointly what he might lawfully have done for them severally.

How can it be held, either that the statute is invalid as denying to non-residents the privilege accorded to residents, as the respondent claims, or that it is valid as a police regula-tion against non-residents for the protection of the people of Vermont, as the state claims, when, for anything that is alleged in this information, or anything that need be alleged or proved under the statute, all the parties concerned may be residents of Vermont? But suppose them to be resident here, can Ver-mont thus discriminate between her own people, denying to a class the privilege of transacting business upon such a ground as this? Not if the ground of classification is purely arbitrary and irrational. No state shall "deprive any person of life, lib-erty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U. S. Const., 14th Amend., sec. 1. To deprive one of the right to labor and transact business is to deprive him of his liberty, and also of his property. To hedge the privilege about

with conditions and exactions for one class which do not exist for others is to deny to the former the equal protection of the laws; and when the classification is based upon a distinction wholly fanciful or arbitrary, having no possible reasonable connection with any proper purpose to be served by the enactment, it is unconstitutional and void. The equal protection of the laws means "the protection of equal laws." *Yick Wo* v. *Hopkins,* 118 U. S. 356, 369.

Our own bill of rights in its first article declares, "that all men are born equally free and independent, and have certain natural, inherent and unalienable rights, amongst which are, enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining happiness and safety;" and in its fourth article, that "every person within this state ought to find a certain remedy, by having recourse to the law, for all injuries or wrongs which he may receive in his person, property or character * * * conformably to the laws;" and in its seventh article, that the "government is, or ought to be, instituted for the common benefit, protection and security of the people * * * and not for the particular emolument or advantage of any single man, family, or set of men, who are a part only of that community." These are the fundamental principles, not of our state only, but of Anglo-Saxon government itself, enlarging upon the axiom that when the facts are the same the law is the same, and inspired by the ideal of justice, that the law is no respecter of persons.

The law touching classification for purposes of taxation and what may furnish a reasonable basis therefor was carefully examined by this court in *State* v. *Hoyt,* 71 Vt. 59; and the rule there recognized, which is none the less applicable here, will be found to determine the question before us.

The result is, that chapter 175 of Vermont Statutes discriminates between agents of firms organized under the laws of this state, and agents of firms organized under the laws of other states, making the act of the latter unlawful while the act of the former in the same circumstances would be lawful, and therein contravenes the first clause of the Fourteenth Amendment of the Federal Constitution, as well as various provisions of our own Bill of Rights, securing to all the equal protection of the laws, and must, therefore, be held, to that extent unconstitutional and void.

*Judgment reversed; demurrer sustained; information adjudged insufficient and quashed; the respondent discharged and let go without day.*