**State of Vermont v. Shop and Save Food Markets, Inc.**

[415 A.2d 235]

No. 262-79

Present: Barney, C.J., Daley and Hill, JJ., and Smith, J. (Ret.), and Gibson, Superior Judge, Specially Assigned

Opinion Filed April 17, 1980

*M. Jerome Diamond,* Attorney General, *Richard A. Unger,* Assistant Attorney General, *Frank F. Berk,* Special Assistant Attorney General, and *Robert Olsen,* Law Clerk (On the Brief), Montpelier, and *Dale O. Gray,* Caledonia County State's Attorney, St. Johnsbury, for Plaintiff.

*John H. Marshall* and *John L. Primmer* of *Downs, Rachlin & Martin,* St. Johnsbury, for Defendant.

*Robert P. McClallen,* Rutland, for Vermont Retail Grocers' Association, amicus curiae.

334

*William D. Robinson,* Colchester, for Vermont Retail Association, Inc., amicus curiae.

*William H. Quinn* of *Pierson, Affolter & Wadhams,* Burlington, for Grand Union Company, amicus curiae.

**Barney, C.J.** On a Sunday afternoon in June 1978, the defendant Shop and Save Food Market was open for business and made a retail sale of canned food, amounting to $1.15. This resulted in the July 5, 1978, filing of a criminal complaint alleging a violation of 13 V.S.A. § 3353(2). This statute is a portion of the Common Day of Rest Act, 13 V.S.A. §§ 3351–3356, which regulates Sunday business activity. Violation of the statute is subject to criminal penalties which include a fine of not more than $200 and imprisonment for 30 days, per transaction, for a first offense. 13 V.S.A. § 3356. Because familiarity with the Act is essential to an understanding of the contentions of the parties, it is set out in an appendix to this opinion.

The defendant entered a plea of not guilty and moved to dismiss the charge on constitutional grounds. A hearing was had on the motion, and various facts were agreed to for the purposes of the motion. The court found the motion to dismiss supportable, holding that the exemptions to 13 V.S.A. § 3353 provided for by § 3354(7)(P) and (JJ) violate the equal protection and due process clauses of the United States Constitution. On motion of the prosecution and prior to the entry of judgment, the district court permitted interlocutory appeal to this Court under V.R.A.P. 5(b)(1). The other grounds for dismissal advanced by the defendant—that the entire scheme of the Common Day of Rest Act violates the equal protection clause, that it is unconstitutionally vague in violation of the due process clause and that the defendant was entitled to rely on two Vermont district court rulings holding the Act unconstitutional—were rejected by the district court. The defendant received permission to cross-appeal from this portion of the ruling.

■■ On appeal, the defendant asserts each of those contentions. The Act is supported by a presumption of constitutionality. *Re Montpelier & Barre Railroad,* 135 Vt. 102, 102, 369 A.2d 1379, 1380 (1977). At the same time, the Act is one

which converts activities which are ordinarily fully legal into crimes if engaged in on certain days. Whenever otherwise legal activity is made criminal, this Court is obliged to look carefully to determine that no basic constitutional concern has been transgressed and that no constitutional limitation on sovereignty has been overstepped. *State v. Carpenter*, 138 Vt. 140, 412 A.2d 285 (1980).

In *State v. Giant of St. Albans, Inc.*, 128 Vt. 539, 268 A.2d 739 (1970), we considered a constitutionally based challenge to 13 V.S.A. § 3301, the statute which preceded the Act at issue here. The test which that statute survived is the one we apply today:

> [T]he classification must rest on grounds somehow relevant to the statutory purpose. "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland, supra*, 366 U.S. 420, 425–6.

*Id.* at 546, 268 A.2d at 743.

Our obligation to examine the statutory classification for rationality is no mere formality. Not every classification in legislation intended to accomplish economic regulation will survive such scrutiny. *Pabst v. Commissioner of Taxes*, 136 Vt. 126, 131–34, 388 A.2d 1181, 1184–85 (1978). But see *New Orleans v. Dukes*, 427 U.S. 297, 306 (1976) (per curiam) (overruling *Morey v. Doud*, 354 U.S. 457 (1957)). It is also essential to understand that the mere fact of classification by a legislature does not establish, by itself, that the enactment is rationally related to a permissible state purpose. *Pabst v. Commissioner of Taxes, supra; State v. Cadigan*, 73 Vt. 245, 252–53, 50 A. 1079, 1081–82 (1901); Vt. Const. ch. I, art. 7.

As already noted, the district court, in holding the Act violative of equal protection, relied on the classification established by the combined impact of two exemptions: the exemption provided for by § 3354(7) (P) and the one provided for by subsection (7) (JJ).

Pursuant to (7) (P) the operation of any store wherein "no more than seven persons . . . are employed on the premises at any one time in the usual and regular week-day conduct of the business" is exempted from the prohibition against doing Sunday business. Pursuant to (7) (JJ) the operation of all food stores, except food stores required to comply with the Unit Pricing Act, is exempted from the prohibition. The Sunday operation of food stores required to comply with the Unit Pricing Act, 6 V.S.A. §§ 681–687, since those stores are excepted from the exemption provision, is prohibited. All food stores are required to comply with the Unit Pricing Act except stores which had gross revenues in the preceding year of less than $500,000, and stores which are owned and operated by one owner and members of his immediate family, unless such stores are part of a chain which had company-wide revenue of $1,000,000 or more during the preceding year. 6 V.S.A. § 686. (See appendix.)

Looking more generally at the effect of these exemptions only on stores of the same nature as defendant—food stores —the scope of these classifications becomes apparent. We note that the parties have stipulated that 90% of all food stores are permitted to open under the statute. "Small" food stores are exempted from the Sunday closing requirement under (7) (P). Although the record does not describe the size relationship, (7) (JJ) also exempts food stores which are "small" in the sense that they do less than $500,000 worth of business per year, unless they are part of a chain of stores grossing $1,000,000 or more. Yet, so long as they are not members of a chain, family owned food stores of an unlimited size in terms of dollar volume are exempted. Presumably, practical limitations on the size and industriousness of one family place some finite, if undefined, limitation on the size of such businesses.

■ The relation between these classifications and the expressed purpose of the Act to "establish a common day of rest

by means of the general cessation of work" is one of unjustified overinclusiveness. Some exceptions to the general prohibition are necessary both in order to insure that the prohibition does not work a hardship on the public and to foster the "social occasions and recreation" which the Act seeks to advance by virtue of the "atmosphere of repose and tranquility" for which it aims. We do not take issue with the initial policy determination that it is appropriate to allow some food stores to open to serve these purposes. Nor would we find it irrational to make that distinction based on the size of the store in question. Nothing has been advanced to us nor can we conceive of any rational basis that demonstrates how the expressed ends of the Act are advanced in the slightest by a classification which permits family owned stores of almost any size to remain open. Indeed the classification undermines, in part, the "atmosphere of repose and tranquility in which . . . families, friends and relatives can gather together for social occasions and recreation." We are, therefore, required to conclude that the classification is not rationally related to the express purpose of the Act.

■ However, in judging the rationality of exemptions (7) (P) and (JJ) we are not limited to the Act's express purpose, but look to any legitimate public policy objective which can be asserted in its defense. *State* v. *Carpenter, supra; Andrews* v. *Lathrop,* 132 Vt. 256, 258–59, 315 A.2d 860, 862 (1974) ; *State* v. *Auclair,* 110 Vt. 147, 160, 4 A.2d 107, 113 (1939). In arguing in support of the statute the State contends that the true, if unexpressed, purpose of the statute is economic regulation. The State contends that the Act distinguishes on the basis of size to promote small business. Presumably that would be a permissible state objective. As we noted above, this is not the objective promoted by this classification. The distinctions among food stores created by exemptions (7) (P) and (JJ) do not rest on size. They do exclude some large stores from Sunday operation, but only those which are not family operated. Since the classification is not rationally related to the end of promoting small business, that end cannot justify it.

■■ We are left to consider what other ends are promoted by the classification. It is apparent that in part at least

the classification does promote the family ownership of food stores. But economic discrimination based solely on consanguity is impermissible. *Goodman* v. *Kennedy*, 459 Pa. 313, 327, 329 A.2d 224, 231 (1974). Similarly, the promotion of locally owned businesses is a suggested justification. Such protectionism, also, is not a permissible state objective. *State* v. *Rockdale Associates*, 125 Vt. 495, 499, 218 A.2d 718, 721 (1966); see *Olan Mills, Inc.* v. *City of Barre*, 123 Vt. 478, 486, 194 A.2d 385, 389 (1963).

Search has revealed no permissible state purpose which is rationally related to this classification. This leaves us with the firm conviction that none exists. Therefore the classification must fail. Still, we are obligated to construe the statutory language to effect the legislative intent, if that can be lawfully done. *In re Delinquency Proceedings*, 129 Vt. 185, 188–89, 274 A.2d 506, 509 (1970). We note that exemption (7) (P) is not the source of the difficulty stated above. It is with the exception provision of exemption (7) (JJ) that the concern arises. Presumably each exemption is intended to stand alone. We therefore conclude that as to the defect presented by this classification, the need for remedy is limited to the exception clause of exemption (7) (JJ). We strike only that provision. See *State* v. *Hazelton*, 78 Vt. 467, 63 A. 305 (1906).

This determination alone is sufficient to require affirmance of the trial court order. We therefore have no occasion to consider the broader grounds advanced by defendant to challenge the validity of the entire scheme of the Common Day of Rest Act, although those questions are not free from doubt.

Since our disposition of this matter is fully accomplished by our answer to the controlling question of law which raises the validity of the district court ruling that the (7) (JJ) exemption violates equal protection, answers to the other questions of law set out would be advisory and therefore improper.

*The controlling question of law challenging the validity, on the basis of equal protection considerations, of the exemptions 13 V.S.A. § 3354(7)(P) and (JJ) is answered in the affirmative as to the exception clause of subsection (7)(JJ). The cause is remanded for entry of judgment of dismissal.*

# APPENDIX

## Title 13, Chapter 74

### § 3351. Title

This chapter shall be known, and may be cited, as the Common Day of Rest Act.

### § 3352. Purpose

The purpose of this chapter is to establish a common day of rest by means of the general cessation of work, which will create an atmosphere of repose and tranquility in which individuals can relax and families, friends, and relatives can gather together for social occasions and recreation.

### § 3353. Prohibition of Sunday business and labor

It shall be unlawful on Sunday for any person, firm or corporation:

(1) to engage in or conduct business or labor for profit in the usual manner and location, or to operate a place of business open to the public; or

(2) to cause, direct, or authorize any employee or agent to engage in or conduct business or labor for profit in the usual manner and location, or to operate a place of business open to the public.

### § 3354. Exemptions

Nothing in section 3353 of this title shall apply to:

(1) any natural person who in good faith observes a day other than Sunday as the Sabbath, if he:

    (A) refrains from engaging in or conducting business or labor for profit and closes his place of business to the public on that day;

    (B) does not conduct his business on the common day of rest in such a way as to create noise which materially disturbs others who are observing that day.

(2) any business which conducts operations through a single corporation, if substantially all the stock of such corporation is owned by persons who, in good faith, observe a day other than Sunday as the Sabbath and who regularly work primarily at the place of business of the corporation, and if the corporation:

(A) refrains from engaging in or conducting business for profit and closes its place of business to the public on that day;

(B) does not conduct business on the common day of rest in such a way as to create noise which materially disturbs others who are observing that day;

(C) operates no more than one place of business.

(3) any person, nonprofit organization, or nonprofit corporation that engages in or conducts business or labor, or keeps open its place of business to the public, if the activities of the enterprise are conducted solely for charitable or religious purposes.

(4) any federal, state, municipal, or local governmental department or agency, or its employees, acting in an official capacity.

(5) any person, firm, or corporation performing acts necessary for the public safety, health, or good order.

(6) any person, firm or corporation engaged in agriculture or the harvesting of timber.

(7) the operation of a store or an establishment primarily engaged in any of the following businesses:

(A) emergency plumbing, heating, cooling, and electrical repair and replacement parts and equipment;

(B) hospitals and nursing homes;

(C) dispensaries of drugs and medicines;

(D) ambulance and burial services;

(E) generation and distribution of electric power;

(F) telephone, telegraph, and messenger services;

(G) water, air, and land transportation services and attendant facilities;

(H) automobile service stations;

(I) distribution of gas, oil, and other fuels;

(J) the sale of fishing, hunting, and other licenses;

(K) heating, refrigeration, and cooling services;

(L) cold storage warehousing and ice manufacturing and distribution;

(M) minimal maintenance of equipment and machinery;

(N) plant and industrial protection services;

(O) industries where continuous processing or manufacturing is required by the very nature of the process involved;

(P) stores wherein no more than seven persons, including the proprietor, are employed on the premises at any one time in the usual and regular week-day conduct of the business;

(Q) greenhouse or nurseries;

(R) automatic self-service laundries;

(S) seasonal stands engaged in the sale of farm produce, dairy products, maple products, seafood, or Christmas trees;

(T) processing plants handling agricultural or dairy products;

(U) the sale of boats, boating equipment, sporting equipment, souvenirs, novelties, or the products of craftsmen;

(V) real estate brokers and real estate salesmen;

(W) isolated or occasional sales of property by persons not engaged in the sale, transfer, or exchange of such property as a business;

(X) newspaper publication and distribution;

(Y) radio and television broadcasting;

(Z) motion picture, theatrical, and musical performances;

(AA) libraries;

(BB) educational lectures, forums, and exhibits;

(CC) restaurants, cafeterias, or other prepared food service organizations;

(DD) hotels, motels, rooming houses, tourist homes, trailer camps, and other lodging facilities;

(EE) athletic and sporting events;

(FF) parks, beaches, ski areas, and other recreational facilities;

(GG) scenic, historic, and tourist attractions;

(HH) amusement centers, fairs, zoos, and museums;

(II) service organizations (USO, YMCA, etc.);

(JJ) the sale of food for human consumption except for a store or establishment required to comply with the provisions of chapter 37 of Title 6.

§ 3355. Definitions

(a) For the purpose of determining qualification in this chapter, a "store" or an "establishment" shall be deemed to be any operation conducted within one building advertising as,

and representing itself to the public to be, one business enterprise regardless of internal departmentalization. All subleased departments of any store shall, for the purpose of this chapter, be deemed to be operated by the store in which they are located. Contiguous stores owned by the same proprietor or operated by the same management shall be deemed to be a single store for the purpose of this chapter.

(b) For the purpose of this chapter, "Sunday" shall include any Sunday and shall also include January 1, July 4, Labor Day and Thanksgiving.

## § 3356. Criminal penalties

(a) Any person, firm or corporation found guilty of violating any of the provisions of this chapter shall be punished by a fine of not more than $200.00 or by imprisonment for thirty days, or by both, for the first offense; and by a fine of not more than $500.00 or by imprisonment for sixty days, or by both, for the second offense occurring within one year following the first conviction. Any offense subsequent to the second offense and occurring within two years following the second conviction shall be punished by a fine of not more than $1,000.00 or by imprisonment for ninety days, or by both, and an additional fine on such offense of $500.00 for each employee caused, directed or authorized to work in violation of this chapter, provided, however, that nothing contained herein shall be construed to permit any penalty upon any employee or agent who has been caused or directed by his employer to violate the provisions of this chapter.

(b) Each separate sale, trade or exchange of property or offer thereof, in violation of this chapter constitutes a separate offense.

## Title 6, Chapter 37

## § 686. Exceptions

The requirements of this chapter shall not apply to:

(1) This subparagraph shall not apply to retail sales agencies or instrumentalities which during the immediately preceding calendar year had gross revenues of less than $500,000.00, or which are owned and operated by one owner and members of his immediate family, except that where two or more sales agencies or instrumentalities are parts of the same company, and the company-wide gross revenues totaled

$1,000,000.00 or more during the immediately preceding calendar year, the sales agencies and instrumentalities of such company shall not be exempt from this subparagraph.

(2) A sale of a consumer commodity for use or consumption on the premises where sold.

**Daley and Hill, JJ.,** concurring. While we join in the result reached in this case, we feel that further comments are necessary. As the majority opinion states, the avowed purpose of the law is a mere sham, masking the actual objective of accomplishing numerous unspecified types of economic regulation, devoid of any permissible rational pattern. "However, legislative leeway should never be permitted to extend to the promulgating of statutes which are utterly lacking in cohesive scheme. When the classifications are not only arbitrary but also irrational they transgress the broad prerogatives of the Legislature." *People* v. *Abrahams,* 40 N.Y.2d 277, 285, 353 N.E.2d 574, 578, 386 N.Y.S.2d 661, 665 (1976). The whole direction of this act is irrationally and arbitrarily to prefer certain groups over other groups. Such preferences run squarely afoul of our constitution's mandate: "That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or advantage of any single man, family, or set of men, who are a part only of that community . . . ." Vt. Const. ch. I, art. 7. Therefore, although this act does not violate the undemanding test of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, *State* v. *Giant of St. Albans, Inc.,* 128 Vt. 539, 268 A.2d 739 (1970) ; *McGowan* v. *Maryland,* 366 U.S. 420, 425–28 (1961), we concur in the majority's subtle holding that our state constitution imposes a more rigorous test, which this act cannot meet.

Upon a different record, we might well find further fault with this act. Although we have not had the benefit of evidentiary proceedings to illustrate the operation of the many exemptions to the act, it seems clear to even the most cursory appraisal that their operation will reproduce the prohibited discrimination and burdening of interstate commerce condemned in *State* v. *Rockdale Associates,* 125 Vt. 495, 218 A.2d 718 (1966). By exempting precisely those stores which are

most likely to be owned by Vermonters, the act probably constitutes impermissible protectionism in derogation of the "Commerce Clause's overriding requirement of a national 'common market.'" *Hunt* v. *Washington State Apple Advertising Commission,* 432 U.S. 333, 350 (1977); *Dean Milk Co.* v. *City of Madison,* 340 U.S. 349, 354 (1951); U.S. Const. art. I, § 8, cl. 3.

It also seems apparent that the portion of the statutory design found wanting in this case was central to the intentions of the Legislature in enacting the law. The majority's excision, by allowing all food stores to be open on Sunday, converts the statute into something foreign to the legislative purpose. The truly appropriate remedy, therefore, would be for the majority to strike the entire act, not to transform it into something that the Legislature did not want.