# State of Vermont v. Ludlow Supermarkets, Inc., d/b/a Clark's Bennington IGA

[448 A.2d 791]

No. 299-81

Present: Barney, C.J., Hill and Underwood, JJ., and Shangraw, C.J., and Daley, J. (Ret.), Specially Assigned

Opinion Filed May 28, 1982

*John J. Easton, Jr.,* Attorney General, and *Edwin L. Hobson, Jr.,* and *Zander B. Rubin,* Assistant Attorneys General, Montpelier, for Plaintiff.

*Fink and Birmingham, P.C.,* Ludlow, for Defendant.

**Barney, C.J.** This opinion deals with the validity of the so-called Sunday closing law, 13 V.S.A. §§ 3351–3358, as tested against the Constitutions of the United States and of Vermont. The law is set out in its entirety in an appendix to this opinion.

The issue before the Court is whether the statutory prohibition, quoted below, passes constitutional muster as an enforceable criminal enactment, or indeed whether it would do so even as a regulatory enactment, carrying only civil penalties. The law declares at 13 V.S.A. § 3353 that:

> It shall be unlawful on Sundays, January 1, July 4, Labor Day, Thanksgiving, except for the Sundays between Thanksgiving and Christmas, for any person, firm, or corporation:
>
> (1) to engage in or conduct business or labor for profit in the usual manner and location, or to operate a place of business open to the public; or
>
> (2) to cause, direct, or authorize any employee or agent to engage in or conduct business or labor for profit in the usual manner and location, or to operate a place of business open to the public.

In 13 V.S.A. § 3355, there are listed a great many exceptions to this prohibition of business operation hardly consistent with the thesis that this is a "common day of rest" act. Central to the issue raised in this case is 13 V.S.A. § 3355(a)(6), which says the law shall not apply to "stores which have no more than 5,000 square feet of interior customer selling space, excluding back room storage, office and processing space." Further on, in 13 V.S.A. § 3355(b), this exception is withdrawn from stores in enclosed shopping malls of more than 20,000 square feet. This last provision was of concern in the case of *State* v. *Grand Union Co.,* 141 Vt. 656, 449 A.2d 984 (1982), from Washington Superior Court, but does not affect the result reached in this opinion.

The issue has been raised in several procedural ways by three lawsuits heard on appeal at the same term of Court. The instant case raises on report by agreement, under V.R.A.P. 5(a), the following question:

As applied to Ludlow Supermarkets, Inc., d/b/a Clark's Bennington IGA, a supermarket containing approximately 9,000 square feet of interior customer selling space that was open to the public on Sunday, May 17, 1981 and that was not exempted under 13 VSA Section 3355(a)(2) through (a)(7), does Title 13 Chapter 74 violate the United States or Vermont constitutions?

*State* v. *Ames Big N Department Store,* 141 Vt. 656, 449 A.2d 984 (1982), from Vermont District Court, Windsor Circuit, comes to us on interlocutory appeal pursuant to V.R.A.P. 5(b), after the lower court granted, then stayed, its order dismissing the prosecution as unconstitutional under the Vermont Constitution. The third case, *State* v. *Grand Union Co., supra,* commenced as a civil action and proceeded to trial. The trial court upheld the law's constitutionality with the exception of subsection 3355(b), which excepted stores located in enclosed malls from the general exemption for small stores. The parties each appealed that portion of the judgment against them. Although the disposition of each of these cases will vary depending on the procedure followed and the result reached below, none presents a factual dispute and all are determined by our resolution of the common question.

At the outset we must set one matter to rest. The State makes the statement that there is no constitutional right to shop on Sunday. This stands constitutional law on its head. Our constitutions are restraints on governmental powers. The rights of citizens are not conditioned on grants given by constitutional fiat, but exist without the aid of expressed governmental permission, subject only to properly authorized circumscription where the public welfare requires. Since the citizens have long since chosen to be governed through a limited grant of authority to each branch of government, it is their right, and this Court's duty, to see that any legislative action prohibiting as a crime otherwise lawful activity is bottomed on the proper exercise of a constitutional power assigned to the legislative branch. *State* v. *Dodge,* 76 Vt. 197, 201–02, 56 A. 983, 983–84 (1904); see also *Vornado, Inc.* v. *Hyland,* 77 N.J. 347, 364 et seq., 390 A.2d 606, 615 et seq. (1978) (Pashman, J., dissenting). Specifically

·we are concerned here with the propriety of the legislature's exercise of its general police power, and whether that power has been exercised so as to affect all citizens equally.

Almost all regulatory legislation, particularly when the concern is economic, tends to be uneven in its impact. Such inequalities are not fatal with respect to constitutional standards if the underlying policy supporting the regulation is a compelling one, and the unbalanced impact is, as a practical matter, a necessary consequence of the most reasonable way of implementing that policy. *State* v. *Auclair*, 110 Vt. 147, 160, 4 A.2d 107, 113 (1939).

Although Vermont formerly had in place a Sunday closing law held to pass muster under these standards in the case of *State* v. *Giant of St. Albans, Inc.*, 128 Vt. 539, 268 A.2d 739 (1970), relying on federal equal protection standards enunciated in *McGowan* v. *Maryland*, 366 U.S. 420 (1961), the Vermont legislature has seen fit to amend the Sunday closing law twice since that case was decided. Thus we are called upon to review the enactment as presently constituted.

This new statute, like its predecessors in *State* v. *Rockdale Associates*, 125 Vt. 495, 218 A.2d 718 (1966), *State* v. *Giant of St. Albans, Inc., supra;* and *State* v. *Shop and Save Food Markets, Inc.*, 138 Vt. 332, 415 A.2d 235 (1980), contains a list of exemptions, grouped in the present law under some twenty-five headings rather than the longer previous lists, that encompass most, if not all possible commercial activities which are thereby allowed on Sunday, in spite of any supposed need for a day of rest or energy conservation. These activities range from engaging in the real estate business to merchandising any commercial item at all, if the store it is sold in is small enough.

In our cases we have not so far chosen to follow the lead of some states in setting such statutes aside on the ground that they lack a cohesive scheme as a basis for their implementation, because they are riddled with exceptions. See *People* v. *Abrahams*, 40 N.Y.2d 277, 353 N.E.2d 574, 386 N.Y.S.2d 661 (1976) ; *Caldor's, Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304, 417 A.2d 343 (1979); *Kroger Co.* v. *O'Hara Township*, 481 Pa. 101, 392 A.2d 266 (1978). Compare *City of*

*Warwick* v. *Almac's, Inc.,* —— R.I. ——, 442 A.2d 1265 (1982).

■ It should be said, however, that whatever our duty to give validity and credit to stated legislative purposes, we are not required to accept as underpinning for any law a purpose that, through wide-ranging exceptions or other emasculating devices, the legislature has reduced to a sham or deceit. See *State* v. *Shop and Save Food Markets, Inc., supra,* 138 Vt. at 343, 415 A.2d at 241 (Daley and Hill, JJ., concurring). The language of Justice Pashman, dissenting in *Vornado, Inc.* v. *Hyland, supra,* is particularly apt:

> Irrespective of whether the statutory classification satisfies any of the current Equal Protection tests, it fails abysmally when subjected to scrutiny under a standard too frequently ignored by judges attracted by the intellectual allure of legal niceties incomprehensible to the public—the test of common sense. When examined from that perspective, the idyllic scenario wistfully conjured by the majority to provide the "rational basis" justifying the statutory classification is patently at odds with the realities of the commercial and consumer worlds of 1978. Assuming any "Sunday Closing" legislation with the purpose ascribed to Chapter 119 can be valid, the unreasonableness of this particular statutory manifestation should earn it the condemnation of this Court.

77 N.J. at 365, 390 A.2d at 615–16.

However, there is a different and more critical vulnerability in the Sunday closing law under review here that requires it to be invalidated. It violates Chapter I, Article 7 of the Vermont Constitution. The basis for that conclusion becomes evident in the analysis that follows.

Each amendment to our law since *State* v. *Giant of St. Albans, Inc., supra,* was decided has directed itself to defining restraints and exceptions to those restraints that result, among other consequences, in forcing large grocery stores to close one day a week, while small grocery stores may remain open. In the 1976 amendment this purpose went unstated, but was advanced in support of the enactment during argument before us in *State* v. *Shop and Save Food Markets, Inc.,*

*supra.* By 1981, when the amendment as it now appears before us was passed, that objective was expressly set out as "to promote the economic health of small business enterprises." 13 V.S.A. § 3352.

■ It can hardly be questioned today that benefit to small stores is the most crucial of the legislative objectives behind the Sunday closing law, stated or otherwise, or that this purpose, being selectively beneficial by design and not as a mere incident to its operation, must be tested by appropriate constitutional standards.

In *McGowan* v. *Maryland, supra,* the United States Supreme Court measured a state law by the standards of the United States Constitution. If the states are to have any meaningful separate sovereign existence, this consideration is of great importance, for the concept of judicial restraint, and its exercise, is involved. Federal examination of a state's exercise of state police power, absent restraints of a suspect character, such as race, sex, religion or national origin, or of basic constitutional concern expressly provided for in the Constitution itself, should certainly be undertaken with a view toward recognizing and respecting properly exercised state authority. Indeed, a recurring theme indicates that the United States Supreme Court recognizes that generalized restraint on state action may unnecessarily restrict the right of the states to attempt individualized responses to particular legislative concerns. *City of Mesquite* v. *Aladdin's Castle, Inc.,* 102 S. Ct. 1070, 1077 (1982) (citing Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv. L. Rev. 489 (1977)). Hence, great deference is given to the presence of any rationally related legislative objective undergirding a state statute when it is being reviewed by our highest federal court.

■ State courts likewise have a duty of judicial restraint which encompasses, similarly, deference to legislative exercise of the sovereign power allocated to that body by the state constitution. It includes the presumption that the legislative action is taken in good faith, and in accordance with constitutional standards. *State* v. *Giant of St. Albans, Inc., supra,* 128 Vt. at 544, 268 A.2d at 742.

But it should be noted that a state court reviewing state legislation is in a very different posture from the United States Supreme Court when it undertakes the parallel task. Rather than disposing of a case on the premise that its impact will presumably affect more than fifty varying jurisdictions, a state court reaches its result in the legal climate of the single jurisdiction with which it is associated, if federal proscriptions are not transgressed. *Developments in the Law— The Interpretation of State Constitutional Rights*, 95 Harv. L. Rev. 1324, 1349 (1982). It has access to specific legislative history and all other proper resources to evaluate the aim and intent of the statutory enactments, as well as the precise expressions of its own state constitutional equivalents.

The federal question is only whether the state law can, in any rational way, be justified under federal constitutional standards. The state issue is whether the enactment is valid under the combination of state and federal requirements.

This is the complicating concern with the law under review. Chapter I, Article 7 of the Vermont Constitution declares:

> That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or advantage of any single man, family, or set of men, who are a part only of that community; . . . .

Somewhat similar to the equal protection test of the fourteenth amendment, this language only allows the statutory classifications involved in a Sunday closing law if a case of necessity can be established overriding the prohibition of Article 7 by reference to the "common benefit, protection, and security of the people."

■ Given the breadth of the police power, described as another name for sovereignty itself, its exercise, even in the presence of other generalized restraints on state action, may be supported if premised on an appropriate and overriding public interest. *Vermont Woolen Corp.* v. *Wackerman,* 122 Vt. 219, 224, 167 A.2d 533, 537 (1961) ; *State* v. *Quattropani,* 99 Vt. 360, 362, 133 A. 352, 353 (1926). This protective concern for the citizenry supports regulation of utilities to prevent wasteful and destructive competition, and to assure safe

and adequate service; regulation of common carriers for customer protection and traffic safety; imposition of product quality standards for consumer protection; graduated income tax schedules; professional licensing, and so on down a lengthy list founded on like concerns for public welfare. See *Sabre* v. *Rutland Railroad,* 86 Vt. 347, 85 A.2d 693 (1913).

In the present case, however, the statute under consideration uses as its justification and policy the very preferential purpose that our constitution says is improper in Article 7. Even though that preference is premised on a declaration that small business enterprises "are essential and fundamental to the economy of the state," 13 V.S.A. § 3352, without more, this objective of favoring one part of the community over another is totally irreconcilable with the Vermont Constitution. It is the very kind of benefit prohibited as an improper purpose by Chapter I, Article 7. The purpose of the preferential legislation must be to further a goal independent of the preference awarded, sufficient to withstand constitutional scrutiny. Justice Stevens would go so far as to say that: "When Congress creates a special preference, or a special disability, for a class of persons, it should identify the characteristic that justifies the special treatment." *Fullilove* v. *Klutznick,* 448 U.S. 448, 553 (1980) (Stevens, J., dissenting). When the state legislature in this case made that identification, it was clearly on the basis of an unconstitutional purpose.

We must then turn to the other stated purposes put forward in support of the statute: (1) the establishment of a common day of rest and (2) energy conservation. The inquiry is whether they both, or either of them, justify resort to the police power in the form this statute takes, to the point of overriding the constitutional prohibition of preference.

Both objectives are certainly legislatively valid, but as is the case with other constitutional concerns relating to due process, equal protection, and the commerce clause, there is a duty on the State to demonstrate that any impingement on the right of citizens to engage in otherwise lawful activities, resulting from pursuit of these objectives, is a mere incident, and that the objectives cannot be otherwise reached.

*State* v. *Dodge, supra,* 76 Vt. at 204, 56 A. at 984. Even accepting for the purpose of this examination that the legislative judgment, however questionable, that the day of rest and energy conservation objectives are critical enough to risk some constitutional infringement on Article 7, it certainly cannot be said that it has in any way been demonstrated that those same purposes cannot be achieved without this particular law. (But see *Vornado, Inc.* v. *Hyland, supra,* 77 N.J. at 364 et seq., 390 A.2d at 615 et seq. (Pashman, J., dissenting)). We have only to look to previous legislation to refute that contention. *State* v. *Giant of St. Albans, Inc., supra.*

■ Indeed, as already noted, the whole recent history of legislation in this area is a demonstration that the core purpose of these laws, confirmed by legislative language, is the special protection of the economic health of small, locally owned, retail stores. Chapter I, Article 7, cannot thus be legislatively repealed. We hold, therefore, that 13 V.S.A. §§ 3351–3358 are invalid under the Constitution of Vermont.

■ Our disposition of these statutes on this basis does not require us to examine the troublesome criminal aspects of the law, but we note our previously stated position that where otherwise harmless activity is made subject to criminal penalties, the enactment must be carefully scrutinized. *State* v. *Shop and Save Food Markets, Inc., supra,* 138 Vt. at 335, 415 A.2d at 236.

*The question on report by agreement is answered in the affirmative and the cause remanded for further proceedings consistent with the views expressed herein.*

## APPENDIX

### Title 13, Chapter 74

§ 3351. Title

This chapter shall be known, and may be cited, as the Common Day of Rest Act.

§ 3352. Purpose

The purposes of this chapter include the establishment of

a common day of rest by significantly reducing commercial activity one day a week so that individuals may relax and pursue social, recreational and family activities; to provide that services and activities which are necessary for the public health, safety and good order are not disrupted during a common day of rest; to promote the economic health of small business enterprises which are essential and fundamental to the economy of the state by creating a commercial environment which allows small businesses the choice of enjoying the benefits of a common day of rest; and to promote the conservation of energy resources.

## § 3353. Prohibition of Sunday business and labor

It shall be unlawful on Sundays, January 1, July 4, Labor Day, Thanksgiving, except for the Sundays between Thanksgiving and Christmas, for any person, firm or corporation:

(1) to engage in or conduct business or labor for profit in the usual manner and location, or to operate a place of business open to the public; or

(2) to cause, direct, or authorize any employee or agent to engage in or conduct business or labor for profit in the usual manner and location, or to operate a place of business open to the public.

## § 3354a. Alternative day of rest

The prohibition against doing business or laboring on Sunday shall not apply to:

(1) any natural person who in good faith observes a day other than Sunday as the Sabbath, if he refrains from engaging in or conducting business or labor for profit and closes his place of business to the public on that day; and

(2) any business which conducts operations through a single corporation, if substantially all the stock of such corporation is owned by persons, who, in good faith, observe a day other than Sunday as the Sabbath and who regularly work primarily at the place of business of the corporation, and if the corporation refrains from engaging in or conducting business for profit and closes its place of business to the public on that day.

## § 3355. Exemptions

(a) Nothing in section 3353 shall apply to:

(1) activities which cannot be prohibited under the constitutions of the United States or Vermont;

(2) any person, nonprofit organization, or nonprofit corporation that engages in or conducts business or labor, or keeps open its place of business to the public, if the activities of the enterprise are conducted solely for charitable or religious purposes;

(3) any federal, state, municipal or local governmental department or agency, or its employees, acting in an official capacity;

(4) sales of property by persons not engaged in the sale, transfer, or exchange of such property as a business;

(5) any person, firm or corporation performing acts necessary for the public health and safety;

(6) stores which have no more than 5,000 square feet of interior customer selling space, excluding back room storage, office and processing space;

(7) any business only to the extent that it is engaged in the following:

(A) emergency services, including but not limited to plumbing, heating, cooling, mechanical and electrical repairs and the distribution of fuels;

(B) the operation of hospitals and nursing homes;

(C) dispensaries of drugs and medicines;

(D) ambulance and burial services;

(E) the operation of public utilities;

(F) water, air and land transportation or shipping and attendant facilities, including automobile service stations;

(G) plant and industrial protection services;

(H) continuous or regular services which are required by the very nature of the service involved; continuous or regular processing which is required by the very nature of the process involved;

(I) agriculture, timbering, or processing of agricultural products, seasonal stands engaged in the sale of farm products;

(J) newspaper publication and distribution, radio and TV broadcasting, motion pictures, theatrical and musical performances;

(K) educational lectures, forums and exhibits and the operation of libraries;

(L) the operation of restaurants, cafeterias, vending machines, catering services, and automatic self-service laundries;

(M) the operation of hotels, motels, rooming houses, tourist homes, trailer camps and other lodging facilities;

(N) recreational and athletic events and facilities, including parks, beaches, ski areas, tourist attractions, amusement centers, craft shows, fairs, zoos and museums;

(O) the sale of recreational, sporting and gardening equipment and supplies by stores primarily engaged in the sale of such equipment and supplies;

(P) auctions and the sale of souvenirs, novelties or the products of craftsmen;

(Q) the operation of fraternal and service organizations;

(R) general construction work and manufacturing when time is of the essence; or

(S) the sale of real estate.

(b) For the purposes of subdivisions (a)(6) and (7)(O) of this section, a store shall be deemed to be any operation conducted with one building advertising as, and representing itself to the public to be, one business enterprise regardless of internal departmentalization or the division of the building into separately owned or leased sales units; and enclosed shopping malls wherein a person may exit one sales unit and enter another without first having to remove himself out-of-doors provided that the enclosed shopping mall has more than 20,000 square feet or any individual sales unit therein exceeds the criteria of (a)(6).

§ 3356. Criminal penalties

(a) Any person, firm or corporation found guilty of violating any of the provisions of this chapter shall be punished by a fine of not more than $200.00 or by imprisonment for thirty days, or by both, for the first offense; and by a fine of not more than $500.00 or by imprisonment for sixty days,

or by both, for the second offense occurring within one year following the first conviction. Any offense subsequent to the second offense and occurring within two years following the second conviction shall be punished by a fine of not more than $1,000.00 or by imprisonment for ninety days, or by both, and an additional fine on such offense of $500.00 for each employee caused, directed or authorized to work in violation of this chapter, provided, however, that nothing contained herein shall be construed to permit any penalty upon any employee or agent who has been caused or directed by his employer to violate the provisions of this chapter.

(b) Each separate sale, trade or exchange of property or offer thereof, in violation of this chapter constitutes a separate offense.

§ 3357. Injunctive relief

Notwithstanding any of the criminal penalties provided in this chapter, the attorney general or a state's attorney may file a complaint in the superior court to enjoin any violations of this chapter.

§ 3358. Severability clause

The provisions of this chapter are severable. If any provision of this chapter, any exemption therefrom, or any application thereof to any person or circumstance is invalid, the invalidity shall not affect other provisions, exemptions or applications which can be given effect without the invalid provision, exemption or application.

**Daley, J.,** concurring. I concur with the views and the result reached by my associates in the main opinion.

I would point out that the legislative act in question is constitutionally infirm inasmuch as it impacts upon areas of personal privacy and freedom. Though directed toward the conventional police power concerns of the public health and welfare, the act trenches upon areas ordinarily reserved for individual autonomy, i.e., what people should be free to do with themselves on Sunday. See *Vornado, Inc.* v. *Hyland,* 77 N.J. 347, 380, 390 A.2d 606, 623 (1978) (Handler, J., dissenting).

Sunday is a shopping day for a great many people, and for those who are so minded this activity, depending upon individual circumstances, is necessitous, convenient, diversionary and recreational, at bottom reflecting the myriad of personal wishes and subjective choices of individuals. *Id.* at 381, 390 A.2d at 624 (Handler, J., dissenting); *id.* at 369, 390 A.2d 618 (Pashman, J., dissenting).

The effect of the Common Day of Rest Act is to allow Sunday shopping provided it is done in a limited group and type of stores, during forty-eight Sundays of the year. This to me is an unwarranted, unjustified regulatory act. It transgresses the proper role of the police power, of protecting the public safety, health and welfare. The police power is not a license to organize individuals by governmental fiat.

The public should not be restricted in their freedom of choice—to relax or to shop in the absence of an adequate governmental justification in the face of public need. Such justification and need has not, in my opinion, been demonstrated.