OMYA, INC. and Foster Brothers Farm, Inc. v. TOWN OF MIDDLEBURY, Town of Brandon, Town of Pittsford, Agency of Transportation, Agency of Commerce, Agency of Natural Resources

[758 A.2d 777]

No. 99-282

July 25, 2000. Plaintiff OMYA, Inc. appeals from a decision of the Vermont Environmental Board limiting the number of trips OMYA trucks may complete through Brandon Village in a given day. OMYA contends that the trip limitation: (1) exceeds the jurisdiction and authority of the Board and unlawfully invades the jurisdiction of the Vermont Agency of Transportation ("AOT"); (2) violates OMYA's right to substantive due process under the Vermont Constitution and is not a proper exercise of police power by the Board; (3) constitutes an improper attempt by the Board to impose a moratorium on land use and development; and (4) violates equal protection under the Vermont Constitution. We affirm.

OMYA extracts calcium carbonate from its quarry in Middlebury, Vermont, and transports it through Brandon on U.S. Route 7 to its processing plant in the town of Pittsford, Vermont. In 1981, the District 9 Environmental Commission granted OMYA a land-use permit in accordance with 10 V.S.A. § 6086 (Act 250) allowing up to 85 round trips through Brandon each day. In 1997, OMYA requested an increase in the allowable number of daily trips through Brandon to 170 round trips per day. In response, the District amended the permit to increase the allowed number of round trips to 113. OMYA appealed to the Environmental Board.

Following extensive evidentiary hearings over five days, the Board denied OMYA's request but expanded the permit slightly to allow a maximum of 115 daily trips through Brandon. The Board found that the requested increase in truck traffic through Brandon would create unreasonable congestion under 10 V.S.A. § 6086(a)(5), and undue adverse effects on aesthetics and historic sites under 10 V.S.A. § 6086(a)(8), but that these effects could be mitigated by limiting the number of trips to 115 trips per day.* As provided under 10 V.S.A. § 6087(b), the license was issued subject to five conditions, including Condition 4, the truck trip limit. This appeal addresses only Condition 4.

This Court gives deference to the Environmental Board's interpretation of Act 250, to its own rules, and to the Board's specialized knowledge in the environmental field. See *In re Wal\*Mart Stores, Inc.*, 167 Vt. 75, 79, 702 A.2d 397, 400 (1997). The findings of the Board with respect to questions of fact, if supported by substantial evidence on the record as a whole, shall be conclusive. See 10 V.S.A. § 6089(c). "We will affirm the Board's conclusions of law if they are rationally derived from a correct interpretation of the law and findings of fact based on substantial evidence." *Wal\*Mart*, 167 Vt. at 80, 702 A.2d at 401 (internal quotation marks omitted).

OMYA first contends that the trip limitation in Condition 4 exceeds the jurisdiction and authority of the Board and unlawfully invades the jurisdiction of the AOT. Not only is the Board not limited by

---

* Before granting a permit such as this one, the Vermont Environmental Board and District Commission were required to find that the subdivision or development would "not cause unreasonable congestion or unsafe conditions with respect to use of the highways, waterways, railways, airports and airways, and other means of transportation existing or proposed" and would "not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas." 10 V.S.A. § 6086(a)(5), (8).

AOT regulation, but "Act 250 itself explicitly proclaims its primacy over, without preemption of, ancillary permit and approval processes." *In re Agency of Transp.*, 157 Vt. 203, 208, 596 A.2d 358, 360 (1991). Thus, the District Environmental Commission and the Board were fully authorized to impose permit conditions upon finding that the requested number of trips through Brandon would cause "unreasonable congestion" and adversely affect the environment.

OMYA argues that AOT should have exclusive authority over the number of trips through Brandon because the Board does not have jurisdiction over all traffic passing through Brandon. This policy argument is better addressed to the Legislature. Under the existing statutory scheme, permit applicants must meet the requirements of Act 250 in addition to those determined by other administrative agencies. Accordingly, "when Act 250 requires more stringent standards than provided in an ancillary permit process, Act 250 controls." *Id.* at 209, 596 A.2d at 361. The fact that Act 250 applies to some but not all developments within the state does not detract from its application to projects falling within its scope. Here, the AOT has no limiting regulation, and OMYA is plainly subject to the Board's requirements.

OMYA next contends that Condition 4 violates its right to substantive due process under the Vermont Constitution and is not a proper exercise of police power by the Board. OMYA claims that because Condition 4 does not bear a real and substantial relationship to the public health, safety, morals, or some other phase of public welfare, there is no rational relationship between the public policy objectives cited by the Board and the imposition of Condition 4. The Board found that OMYA's trucks currently account for 24% of truck traffic through downtown Brandon and that under the proposed increases, OMYA trucks would account for 40% of truck traffic through Brandon. The Board also found that present levels of truck traffic disturb guests at local inns; make sidewalk conversation difficult and unpleasant; create dust and dirt that mar historic buildings; create fumes and vibration; and impede business and personal use of property in Brandon. These findings establish a real and substantial relationship between Condition 4 and public welfare. See *Southview Associates, Ltd. v. Bongartz*, 980 F.2d 84, 103 (2d Cir. 1992) (where developer alleged its expectation of receiving Act 250 permit amounted to property right, court held that even "debatable" grounds for Board's action saved it from being arbitrary or capricious).

OMYA also argues that Condition 4 is an improper and invalid attempt by the Board to impose a moratorium on land use and development that depend upon Route 7 for the transportation of goods. OMYA asserts that indefinite suspensions of development may be an impermissible moratorium, relying on *Union Oil Co. v. Morton*, 512 F.2d 743 (9th Cir. 1975). The *Union Oil* court found that because the moratorium in question would have left Union Oil with a worthless drilling lease, the moratorium amounted to a taking. *Id.* at 751. A facial taking claim must allege that the adoption of land use regulations constitute a taking of the property. See *Killington, Ltd. v. State*, 164 Vt. 253, 261, 668 A.2d 1278, 1283 (1995). To prevail on such a challenge, plaintiffs must show either that the regulation in question does not substantially advance a legitimate state interest or that it denies the owner an economically viable use of his land. See *Chioffi v. City of Winooski*, 165 Vt. 37, 41, 676 A.2d 786, 789 (1996) (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980)). As previously discussed, OMYA cannot prevail under the first standard. To prevail under the second alternative, plaintiffs must show a denial of all economically beneficial use of their land. See *id.* at

534

42, 676 A.2d at 790. Plaintiffs have made no such showing. Therefore, regardless of the claim that the condition imposes a moratorium, there is no basis to conclude that it is a taking.

Finally, OMYA contends that Condition 4 is an unreasonable restriction on its use of Route 7, and that because other operators are not, and in some cases cannot, be similarly restricted under Act 250, Condition 4 violates the Common Benefits Clause of the Vermont Constitution.

Courts have consistently upheld less than comprehensive legislation out of a recognition that, for reasons of pragmatism or administrative convenience, the legislature may choose to address problems incrementally. See, e.g., *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (legislature may adopt regulations "that only partially ameliorate a perceived evil"); *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955) ("The legislature may select one phase of one field and apply a remedy there, neglecting the others."); *Baker v. State*, 170 Vt. 194, 219, 744 A.2d 864, 882 (1999) ("It is . . . well settled that statutes are not necessarily unconstitutional because they fail to extend legal protection to all who are similarly situated."). Thus, the fact that Act 250 does not apply to all in-state developments or out-of-state enterprises does not render it constitutionally infirm.

To support its equal protection claim, OMYA cites permits granted to other businesses despite associated increases in traffic. The permits in question involved additional volumes of passenger car traffic. There is no evidence that the passenger cars have similar environmental impacts to OMYA's tractor-trailer trucks. See *Baker*, 170 Vt. at 215, 744 A.2d at 880 (to trigger equal protection analysis, defendant must be treated differently from other similarly situated class members).

OMYA also cites *State v. Cadigan* for the proposition that "[t]o deprive one of the right to labor and transact business is to deprive him of his liberty, and also of his property. To hedge the privilege about with conditions and exactions for one class which do not exist for others is to deny to the former the equal protection of the laws . . . ." 73 Vt. 245, 251-52, 50 A. 1079, 1081 (1901). OMYA fails to include the opinion's telling next sentence, "and when the classification is based upon a distinction wholly fanciful or arbitrary, having no possible reasonable connection with any proper purpose to be served by the enactment, it is unconstitutional and void." *Id.* at 252, 50 A. at 1081. OMYA has not shown that it has been singled out under Act 250 for a purpose "wholly fanciful or arbitrary." Accordingly, its constitutional claim is without merit.

*Affirmed.*