## State of Vermont v. Giant of St. Albans, Inc.

[268 A.2d 739]

No. 6-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed July 29, 1970

*James M. Jeffords,* Attorney General, *H. Russell Morss, Jr.,* Assistant Attorney General and *Richard A. Gadbois,* State's Attorney for the State.

*Kissane & Heald* and *Daniel J. Lynch,* St. Albans, on the brief, for Defendant.

**Barney, J.** Two cases involving our Sunday closing law are before us, and were heard together in this Court. One, in which the defending and appealing respondent is a merchandising corporation, Giant of St. Albans, Inc., is here for review of certain criminal convictions. The other, involving Gilfel of Rutland, Inc., which conducts its retail store business as Ames Department Store, passes up certain certified questions and rulings on motions to dismiss, preliminary to trial on the merits. Since all issues raised are more broadly available in a conventional appeal, the convictions of Giant will be reviewed first, but with the benefits of a full presentation on the law by both respondents. If any of the certified questions in the Gilfel matter require further exposition, they will be taken up in a separate opinion to follow.

Giant of St. Albans, Inc., was convicted of eight counts of violating the provisions of 13 V.S.A. § 3301, which provides:

(a) A person shall not, between twelve o'clock Saturday night and twelve o'clock the following Sunday night, exercise any secular business or employment, except works of necessity and charity, nor engage in any dance, nor shall a person operate, promote or engage in any play, game, sport or entertainment, except winter and water sports, tennis, bowling, pool, billiards, golf, horse races and meets or horse shows during such hours which disturb the public peace or for which any compensation is received, directly or indirectly, except as follows:

(1) As otherwise provided in this chapter; .

(2) Articles of food may be sold, served, supplied and delivered at any time of the day;

(3) Prepared tobacco, ice, sodas and soft drinks, ice cream, flowers, confectionery, souvenirs, antiques, baskets, newspapers, magazines, prescriptions, patent medicines, drugs and hospital supplies may be sold and deliv-

ered, and real estate may be shown but not sold and fishing, hunting and other licenses may be sold at any time of the day;

(4) The sale of gasoline, grease, oil and other petroleum products to operators of motor vehicles, motorcycles, motorboats and aircraft may be made at any time during the day and making of repairs including the sale of repair parts to motor vehicles, motorcycles, motorboats and aircraft so as to permit such vehicles to proceed under their own power and the towing of any such vehicle unable to proceed under its own power shall be permitted at any time during the day, but the sale of motor vehicles, motorcycles, boats, motorboats, outboard motors and aircraft is prohibited;

(5) The sale and rental of skiing, skating, golf, fishing, tennis, trap shooting, bowling, swimming and water skiing equipment, boats, motorboats and outboard motors, within ten airline miles of areas devoted to such sports shall be permitted at any time during the day but such sale shall not be permitted at any other place;

(6) The operation of any public utility which is subject to regulation by the public service board shall be permitted;

(7) Pari-mutuel running and harness races or meets.

(b) Notwithstanding the provisions of this section, any secular place of business not otherwise prohibited by law may be operated between twelve o'clock Staurday night and twelve o'clock the following Sunday night if the natural person managing or in control of the management of the place of business conscientiously believes that the seventh day of the week or the period which begins at sundown on Friday night and ends at sundown on Saturday night should be observed as the Sabbath, and causes all places of business in Vermont which he manages or over which he has control to remain closed for secular business during the entire period of twenty-four hours which he believes should be observed as the Sabbath.

Upon being charged with Sunday operation in violation of this statute, the respondent consented to trial by court on agreed and conceded facts. These established that the respond-

ent was open for business between one and six p.m. on the Sunday charged. Prosecution was based on the sales, at that time, of a gallon of paint, a paint brush, a steel pinch bar, a movie camera projection lamp, a pyrex cake plate, a pair of undershorts, a box of Christmas cards and a pair of nylon stockings. The respondent's business is that of a self-service general department store. Its stock includes both items exempted under 13 V.S.A. § 3301, and items not so exempted. The non-exempted items constitute the major portion of the respondent's business, so much so that it is economically prohibitive for the respondent to open on Sunday and sell only exempted items. The respondent was not eligible under 13 V.S.A. § 3301(b) to substitute a Saturday closing, and, in fact, was not closed any other day of the week. The conduct of business that Sunday did not, in any manner, disturb the public peace or tranquility. All customers were accommodated in its private parking area without traffic congestion. It was agreed that the respondent was not eligible to sell sporting goods on Sunday, being beyond the ten airline mile limit. The five hours of Sunday operation represented over ten percent of the week's gross sales, even though the store was open twelve hours on all other days. The employees on duty volunteered to work, and were paid on the basis of time and one-half for each hour worked, with a full day off during the week.

Each item listed in the facts as being sold was a separate count in the information, and the trial court found the respondent guilty on all counts. A fine of $200 was assessed on the first count and $10 on each of the remaining counts. The prosecution was initially challenged by a motion to dismiss, and that challenge renewed by a motion in arrest of judgment. With fines imposed on each count as a separate offense, this was made an issue by the respondent, also, by his claim that there was but one offense instead of eight. Execution of the sentences was stayed and this appeal perfected.

■ On May 29, 1961, the United States Supreme Court handed down four opinions confirming the right of state legislatures to variously regulate, within certain constitutional limits, the days on which it shall be legal to engage in certain business activities. These cases were *McGowan* v. *Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393; *Gallagher* v. *Crown*

*Kosher Super Market*, 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536; *Two Guys From Harrison-Allentown* v. *McGinley*, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551, and *Braunfeld* v. *Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563. These cases are binding on this Court with respect to standards imposed on our statutes in this field by the U.S. Constitution, including the Establishment Clause of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and govern all constitutional issues brought before us in this appeal.

■ Since we are dealing with an acknowledged power in the legislature to enact regulatory measures, it is not for this Court to pass upon the propriety of the legislative election to exercise that power, nor to question the wisdom of resort to it. Our function is only to determine whether or not the manner or its exercise meets constitutional standards and violates any fundamental rights. Unless the unkempt form of the statute contributes to the infringement of constitutional rights, it is not grounds for invalidation.

■ The religious origin of the statute before us cannot be questioned. This is true of most such enactments. Such beginnings do not condemn the law as one respecting the establishment of religion in violation of the First Amendment, if subsequent development has sufficiently altered its purpose from one in aid of religion to one of setting aside a nonreligious day of rest and recreation. *McGowan* v. *Maryland, supra,* 366 U.S. 420, 449.

A brief review of the history of this statute will demonstrate just such a change in purpose from the implementation of proper religious observance to one of setting aside a time for general rest and recreation. Going back to the General Laws of 1917 we find section 7097 aiming its proscription not only at the promoter and organizer of dances, games and other Sunday activities, but at all the participants, including one who resorts to a house of entertainment for amusement and recreation on Sunday. Section 7099 forbad Sunday hunting.

In 1921, No. 215 of the Public Acts of that year relaxed the proscription on play, games, sports or entertainment to those for which compensation was received. No. 215 of the Public Acts of 1937 totally repealed the prohibition on Sunday hunt-

ing. Two years later No. 230 of the Public Acts of 1939 marked a complete change in the emphasis of the law. Winter sports, tennis and golf were totally excluded from the operation of the statute, and towns were given the option of voting to permit Sunday baseball, movies, lectures or concerts. The hours were variously limited to afternoon and evening, but admission fees were permissible. No. 70 of the Public Acts of 1949 added basketball and football to those options, and in 1955 Sunday roller skating was specifically allowed.

By 1961, in No. 273 of the Public Acts of that year, the statute had assumed pretty much its present form, adding water sports, bowling and horse shows to the totally exempted list, as well as providing all the exemptions from food through sports equipment in subsections (1) through (6). At this time section (b) was also added. According to legislative records, these changes were under consideration for more than a month after the announcement of the Sunday law decisions by the U.S. Supreme Court, and the effective date of the legislation was August 1, 1961.

In 1967 came further changes with exempted status being given to pool, billiards and pari-mutuel racing. Certainly there can be no question but that there has been a complete transformation from a religious to a recreational statute directing a day of rest and relaxation. As such, it does not contravene any First Amendment proscriptions. See *Gallagher* v. *Crown Kosher Super Market, supra,* 366 U.S. 617, 627.

The respondent contends that the Sabbatarian exemption in 13 V.S.A. § 3301(b) condemns the enactment as religious. If this were so, we would have no hesitancy in declaring it a severable section under the authority of *State* v. *Rockdale,* 125 Vt. 495, 499, 218 A.2d 718. Moreover, such an exemption is not a constitutional disqualification under any of the Sunday law cases already cited. As Chief Justice Warren stated in *Braunfeld* v. *Brown, supra,* 366 U.S. 599, 608, "A number of States provide such an exemption, and this may well be the wiser solution of the problem." The opinion then goes on to give reasons why such an exemption is not a requirement of constitutionality. It touches on possible potential First Amendment difficulties, but those questions are not before us, and this respondent, by the facts, has no standing to raise

them. Frankfurter, J., put it this way in his concurring opinion in *McGowan* v. *Maryland, supra,* 366 U.S. 420, 520: "However preferable, personally, one might deem such an exception, I cannot find that the Constitution compels it." This is quite contrary to saying that such an exemption is impermissible.

We turn now to the contentions that the Fourteenth Amendment's Due Process and Equal Protection Clauses are contravened by the provisions of 13 V.S.A. § 3301. The respondent criticizes the large list of exempted commodities as unrelated to public health, welfare or safety or to the necessary or reasonable needs of the public on Sunday. All agree that the test the statute must meet is that the classification must rest· on grounds somehow relevant to the statutory purpose. "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests· on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan* v. *Maryland, supra,* 366 U.S. 420, 425–6.

■ We are not now concerned with testing the list of exempted activities and commodities as "works of necessity and charity," since the amended form of the statute has carved out an overriding purpose by way of exception, authorizing Sunday activities of a recreational nature. An examination of the list shows that they all relate to the accomplishment of recognized leisure-time and recreational pursuits, whether undertaken by local citizens or visitors from outside. Perhaps it is. an unhappy fact, or perhaps it is a tribute to business enterprise, that there is profit to be made and commerce to be accomplished as an accompaniment to recreation. But this does not make the legislative selection of such activities to be authorized for Sunday operation invidious, or an abuse of its discretionary. power. No evidence in support of any such contention has been advanced.·Since the classification

is not unreasonable or irrational, and relates to an authorized legislative purpose, it does not affront constitutional standards. *Gallagher* v. *Crown Kosher Super Market, supra,* 366 U.S. 617, 624.

■ The respondent attacks the exemption relating to sales of sporting goods authorized within "ten airline miles" of areas devoted to certain sports. *McGowan* v. *Maryland, supra,* 366 U.S. 420, 427, specifically authorizes territorial differentiation as acceptable under the Equal Protection Clause, so long as there is a reasonable basis for that territorial differentiation. Such a basis is apparent on the face of this statute.

The same provision is also questioned as being so vague and uncertain as to be unconstitutional. The respondent's standing to raise this issue is compromised by its concession in the facts that it is not entitled to exercise that exemption, since it is more than ten miles from the sports activities involved.

■ ■ Moreover, the complaint of unconstitutional vagueness will not stand up. The constitutional standard is that a criminal statute, as this is, must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. *United States* v. *Harriss,* 347 U.S. 612, 617. This case goes on to say, on page 618, that all that is required is that the general class of offenses to which the statute is directed be plainly within its terms, even though marginal cases, where doubts might arise, could be conceived of. If reasonable inquiry or ordinary business knowledge, in this case, would make a person of ordinary intelligence aware of the nature of the prohibitions, the constitutional test is satisfied. *McGowan* v. *Maryland, supra,* 366 U.S. 420, 428. There certainly is no uncertainty that cannot be dispelled by inquiry as to the measure of ten airline miles, or the nature and extent of the local sports scene.

The long-standing exempting phrase, "works of necessity and charity," is under similar attack. We could comment that since the "necessity" here involved relates to "works" rather than commodities, cases from other jurisdictions relating to "articles of necessity" are of little help. Here, too, the agreed facts reveal that the respondent acknowledges that its merchandising activities are not within this exclusion. But moving

beyond that circumstance to the constitutional test already discussed, it is clear, as a matter of history, that this exemption, from *Lyon* v. *Strong*, 6 Vt. 219, to *Jacobs* v. *Clark*, 112 Vt. 484, 28 A.2d 369, has not been available for sales, purchases and other ordinary business transactions. This Court's refusal to define the business transacted in *State* v. *Corologos*, 101 Vt. 300, 143 A. 284, has been legislatively overruled by specific amendment to the statute. This and other extended amendments of the statute, previously set out, having accomplished a change in statutory thrust and purpose, may well also require, in an appropriate case, a re-examination of the limits of "necessity". But that issue is not raised by the facts in the case before us, so we do not reach that constitutional issue. *Hanley* v. *United Steel Workers*, 119 Vt. 187, 192, 122 A.2d 872. The facts that are before us demonstrate no constitutional infirmity for vagueness.

██ Since the statute survives constitutional attack, we reach the last question raised in the appeal. Respondent was punished for each item sold, as a separate offense. Its contention is that being open for business on that Sunday constituted a single offense. The statute itself admittedly gives little guidance. We do agree with the state's contention that treating a day's operation in violation of the statute as a single offense would tend to convert a prohibitory enactment into a licensing statute. In view of the immense volume of sales of large general merchandising operations such as this respondent conducts, this is an important enforcement consideration. Mr. Justice Frankfurter dealt with this very issue in *McGowan* v. *Maryland, supra*, 366 U.S. 420, 540–2, in his concurring opinion. He indicated it is a proper legislative consideration to avoid making persistent violations of the statute "profitable business." We agree, and since legislative purpose is, as we have so frequently stated, a critical concern in statutory construction, we must reject the contention of the respondent.

*Judgments affirmed. Let execution be done.*