### State of Vermont v. Alfred Trucott

[487 A.2d 149]

No. 83-095

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed December 14, 1984

*Philip H. White,* Orleans County State's Attorney, Newport, and *Robert M. Butterfield,* Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Jean A. Swantko,* Public Defender, St. Johnsbury, for Defendant-Appellant.

**Peck, J.** This is an appeal by defendant from his conviction, after trial by jury, of being in actual physical control of a motor vehicle upon a public highway while under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201(a)(2). We affirm.

Defendant presents four issues for review, breaking down each issue into subissues. We identify and discuss the several issues and their components below seriatim.

The factual background of the charge is relatively simple. At approximately ten o'clock in the evening of August 10, 1982, a state police officer responded to a call reporting a vehicle stopped at the side of the road with its lights on, "revving its motor." At the scene, the officer discovered a Chevrolet pickup truck parked in a "pull-off" area on Route 5 about a mile and a half south of Orleans Village in the town of Barton. The vehicle's engine was not running, and the lights had been turned off.

The officer parked his cruiser in the pull-off area facing the truck and approached the driver's side on foot. He found defendant, the sole occupant, seated and asleep behind the steering wheel. The window on the driver's side had been rolled down, the vehicle's keys were in place in the ignition; the odor of an alcoholic beverage was noticeable from the interior of the truck cab, and on defendant's breath. A bottle of beer, half full, lay on the seat beside him.

Upon being awakened by the officer, defendant appeared dazed. He first removed the keys from the ignition, and then reinserted them. He had difficulty in locating his driver's license. Subsequently, when he walked to the cruiser at the officer's request, defendant swayed and appeared unable to walk a straight course. At the cruiser, the officer administered the alco-sensor test to defendant; based on the results of the test and his observations, the officer took defendant into custody and drove him to the police barracks for further testing and processing under the alcohol-related motor vehicle laws.

There were other common clinical symptoms of alcohol impairment displayed by defendant, either at the site where the officer first discovered him, later at the police barracks, or both.

He was unable to perform satisfactorily a heel-to-toe walking test; his eyes were watery and bloodshot and his speech was slurred. The transcript and the record generally indicate that neither these factual elements, elicited at trial through the testimony of the officer,[1] nor the State's contention that defendant was under the influence of alcohol, were seriously challenged by the defense. The issues briefed and argued lie in other areas.

Two other incidents, occurring after defendant had been taken into custody by the officer, require mention because they relate directly to issues raised by his appeal. During the drive in the state cruiser to the police barracks, defendant told the officer that he was on his way "back from St. Johnsbury, headed towards Newport." The officer was unable to recall whether the remark was spontaneous and voluntary or made in response to some question or comment. Later, after processing at the barracks, and while waiting for a ride to his home, defendant remarked to the officer: "You know, I wish they never made alcohol. I wish I would have been somewhere else tonight. I could have taken a taxi home." We note here that, when the officer testified about these statements, defendant made no objections or motions to strike, nor did his subsequent cross-examination of the officer address them.

## I.

Defendant's first challenge is to the trial court's instruction to the jury on "actual physical control." He breaks down his objection into subissues which we consider in the order presented.

In substance, defendant's first subissue questions the controlling statute, 23 V.S.A. § 1201 (a) (2), as much as the instruction based on that statute. The relevant part of § 1201 reads:

> (a) A person shall not operate, attempt to operate, *or be in actual physical control* of any vehicle on a highway while:
>
> . . . .

---

[1] The officer was the sole witness. Defendant did not testify, nor was any evidence presented on his behalf.

(2) under the influence of intoxicating liquor . . . . (Emphasis added.)

Defendant claims that under the statutory language which prohibits a person who is under the influence of intoxicating liquor from being "in actual physical control" of a vehicle, an ordinary person cannot determine what conduct is prohibited. Therefore, he argues, the statute is unconstitutionally vague (presumably under the due process clause of the Fourteenth Amendment to the United States Constitution, see *State v. Stevens,* 137 Vt. 473, 475, 408 A.2d 622, 623 (1979)).

We recognize that there is some division of opinion among the various jurisdictions in this country as to the interpretation of the phrase "actual physical control" in motor vehicle cases involving a person under the influence of an intoxicant, particularly if the accused is found asleep or unconscious. Nevertheless, we do not agree that the meaning of the statute is as vague and uncertain as defendant claims. There are many criminal statutes for which opposing interpretations have been urged by the respective parties; however, such differences are not necessarily sufficient to render a challenged statute void for vagueness. In such cases it becomes the responsibility of this Court to determine the legislative intent.

In *State v. Storrs,* 105 Vt. 180, 163 A. 560 (1933), this Court held that the fact the motor of the vehicle could not be activated because of wet wiring did not preclude prosecution for an attempt to operate. More recently in *State v. Godfrey,* 137 Vt. 159, 400 A.2d 1026 (1979), a case in which the defendant was found "slumped behind the steering wheel, either sleeping or unconscious," we held: "The element of actual physical control is present, whether or not the defendant is in a position to effectively exercise it." *Id.* at 161, 400 A.2d at 1026–27. In the same case, Justice Larrow, writing for the Court, quoting from *Hughes v. State,* 535 P.2d 1023, 1024 (Okla. Crim. App. 1975), said, " 'an intoxicated person seated behind the steering wheel of a motor vehicle [at rest] is a threat to the safety and welfare of the public. The danger is less than where an intoxicated person is actually driving a vehicle, but it does exist.' " *Id.* at 161, 400 A.2d at 1027. Such a person, who is asleep or "passed out," may recover consciousness and drive off while still under the influence.

■ We hold, first, that the meaning of 23 V.S.A. § 1201 (a) is not vague or uncertain within the constitutional strictures of the due process clause of the Fourteenth Amendment. Its language is sufficient, in our judgment, to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. *State* v. *Stevens, supra,* at 479, 408 A.2d at 626 (citing *State* v. *Giant of St. Albans, Inc.,* 128 Vt. 539, 547, 268 A.2d 739, 744 (1970), which in turn cites *United States* v. *Harriss,* 347 U.S. 612, 617 (1954)). Secondly, on the basis of their respective facts, we hold that *State* v. *Godfrey, supra,* is dispositive of the instant case on its merits. In doing so, we recognize, as defendant contends, that there are some factual differences between this case and *Godfrey.* These differences are examined below.

In *Godfrey* the vehicle in which defendant was discovered slumped behind the wheel asleep or unconscious was stopped in one of the main traveled lanes of the highway, blocking traffic in that direction. The motor was running, the key was in the ignition, the taillights were on, and the shift lever was in "park." In the case at bar, the defendant's vehicle was not on the main traveled portion of the highway but in a pull-off area; the motor was not running and the lights had been extinguished.

The trial court, in its initial instruction, quoting essentially from *Godfrey,* told the jury that "actual physical control" did not require a showing that the vehicle was in motion or that the motor was running, but "that the defendant had the immediate potential to operate." Defendant objected to this instruction. Thereafter, the jury returned from its deliberations with a request for clarification, primarily of the prior instruction relating to the defendant's "immediate potential" to operate. Once again the court relied on language from *Godfrey.* He instructed the jury that whether defendant had the immediate potential to operate was a question of fact for its determination.

■ Defendant's protest is on two grounds. First, that the two instructions were contradictory and confusing. We disagree. Both instructions were proper statements of the law, in and of themselves. Moreover, we are satisfied that the second instruction did precisely what it was meant to do. It car-

ried the initial instruction a step further and served to clarify the issue. Accordingly, we reject defendant's contention that the two instructions were either contradictory or confusing.

Second, defendant requested below, and insists again on appeal, that if the court based its instruction on language appearing in *Godfrey*, then it must explain the factual situation of that case, and that the court's refusal to do so was prejudicial error.

Again, we disagree. Jury instructions in virtually every case are based, in some measure, on earlier decisions. To require a jury to compare factual situations would be a confusing and misleading task. The only proper question here is not the facts of the two cases, but whether the charge correctly stated the law to be applied to the facts of this case, regardless of its source. Again, we find no error.

## II.

Defendant contends next that the trial court erred in refusing to grant his motions for a judgment of acquittal. His motions were based on two grounds, (1) there was insufficient evidence to prove actual physical control; (2) the State failed to establish that defendant's vehicle was on a public highway.

We have reviewed the transcript carefully. However, even a more hasty examination would be sufficient to show that there is more than ample evidence to establish both elements. Defendant's argument shows little more than a disagreement with the verdict.

In its charge to the jury on the question of actual physical control, the court said: "The State does have to prove to you and what you have to find beyond a reasonable doubt is that the defendant had the immediate potential to operate that motor vehicle. And if they have proven to you that[,] that is actual physical control."

In the light of *Godfrey*, the implication of this language may have been more favorable to the defendant than is actually required. Nevertheless, it is correct literally, and more than fair.

Turning to the evidence, the officer was able to awaken the defendant although he shook his arm twice before he

succeeded. The defendant was then able to, and did, remove the key from the ignition, and immediately reinserted it. He looked for, and eventually found, his operator's license. Seconds later, defendant walked, albeit unsteadily, from his own vehicle to the cruiser. His speech, although it was slurred, was coherent and made sense. We cannot agree that this evidence does not support a finding "that defendant had the immediate potential to operate that motor vehicle"; we hold that it was sufficient.

Equally lacking in merit is defendant's contention that the State failed to prove that his vehicle was on a public highway.

Title 23 V.S.A. § 4(13) defines the relevant terms for purposes of the statutes relating to motor vehicles, and enforcement of the laws regulating vehicles as contained in Title 23, including, therefore, § 1201(a)(2). Section 4(13) provides:

"Highway," "road," "public highway" or "public road" shall include all parts of any bridge, culvert, roadway, street, square, fairground or other place open temporarily or permanently to public or general circulation of vehicles, and shall include a way laid out under authority of law.

■■ Defendant has seized on the concluding phrase of this definition which provides that "highway," "public highway," etc., "shall *include* a way laid out under authority of law." (Emphasis added.) He argues that the State failed to present any evidence that the pull-off area had been laid out "under authority of law." This argument ignores the remainder of the subdivision contrary to the familiar and similar rules that, in construing a statute, this Court will not excerpt a phrase and follow what purports to be its literal reading without considering the provision as a whole, *In re Judy Ann's Inc.*, 143 Vt. 228, 231, 464 A.2d 752, 754 (1983), and proper construction requires the examination of the whole and every part of the statute. *Town of Cambridge* v. *Bassett*, 142 Vt. 171, 177, 453 A.2d 413, 416 (1982) (quoting *Harden* v. *Vermont Department of Taxes*, 134 Vt. 122, 124, 352 A.2d 685, 686–87 (1976)).

Once these salutary rules are applied to § 4(13), the fallacy of defendant's argument is clear. All that the phrase to which he refers stands for is that "highways," "public highways," and the like, *includes*, among others, but is clearly not limited

to, "a way laid out under authority of law." Examined in its entirety, § 4(13) is extremely broad. Thus, in *Bourgon* v. *Farm Bureau Mutual Insurance Co.*, 128 Vt. 593, 270 A.2d 151 (1970), a case that construes what is now § 4(13), this Court held that: "As a place 'open temporarily or permanently to public or general circulation of vehicles' the frozen surface of Lake Dunmore qualifies as a 'public road.'" *Id.* at 595, 270 A.2d at 153. This holding cites *State* v. *Hallock*, 114 Vt. 292, 44 A.2d 326 (1945), in which this Court held that the frozen surface of Lake Champlain fell within the "or other place" clause of the statute.[2] See also our recent opinion in *State* v. *Jarvis*, 145 Vt. 8, 482 A.2d 65 (1984), holding that a restaurant parking lot in Stowe was a "highway" for purposes of 23 V.S.A. § 1201(a)(1).

■ In view of the above we hold that § 4(13) does not require a showing that defendant's vehicle was discovered on "a way laid out under authority of law." Such ways are merely *included* among other possibilities covered by the statute. There may be some overlapping under § 4(13); thus, a "road" under this provision, may, in a specific instance, be "a way laid out under authority of law," such as those "highways," as defined for purposes of Title 19 relating to the highway law as distinguished from the motor vehicle law. See 19 V.S.A. § 1(5). Defendant may have been confused by this distinction.

In charging the jury on the highway element of the offense, the court pointed out correctly that the key was not *ownership* of the highway but whether it is open to the general circulation of the public. This is a correct exposition of the law under § 4(13). Finally, if the frozen surface of a body of water comes within the meaning of the statute, a vehicular pull-off area, lying immediately adjacent to the highway, presents an even stronger case for application of the statutory definition. The officer testified at various points during direct and cross-examination that the pull-off in which he discovered defendant's vehicle "is an area on the east side of the highway, approximately 12 to 15 feet wide right along side, parallel to the highway," that it is immediately adjacent to the highway and "[i]t is *used* as a pull-off area." (Emphasis added.)

---

[2] See Public Laws of Vermont, 1933, § 4986; the relevant definition is identical to present 23 V.S.A. § 4(13).

 There is no need to explore this issue further. Clearly, § 4(13) is applicable; the charge was proper, and the evidence was sufficient. There was no error.

## III.

Defendant continues his claims of error based on testimony by the officer to which there was no objection whatever interposed at the time of trial, and of a claimed misinterpretation of that testimony by the prosecutor during his closing argument.

The officer's statement, elicited without objection, was, as we noted above in relating the facts, that defendant told him "he [defendant] was coming back from St. Johnsbury, headed for Newport." The officer testified that he was unable to recall whether he had "asked him" or if defendant volunteered the information.

In closing argument, the prosecutor, possibly misinterpreting this earlier testimony, said, "we recall the defendant himself admitted to the officer that he had been operating that vehicle." Defendant objected on the grounds that he had made no such admission, did not admit operation but only explained where he was going, and that the prosecutor's statement was highly prejudicial. He thereupon moved for a mistrial. The court denied the motion but gave a cautionary instruction.

In his brief, defendant argues that the prosecutor's statement was not only error in fact, which it may have been, but that it "also had the effect of inferring to the jury that he was guilty of a crime for which he had not been 'charged, tried or convicted.'" As support for his position he cites State v. Williams, 137 Vt. 360, 406 A.2d 375 (1979). Williams involved hearsay statements relating to instances of alleged criminal activity which were before the court for consideration at sentencing, but concerning which the defendant had never been charged, tried, or convicted. In the instant case, defendant does not inform us of any criminal activity mentioned in the prosecutor's statement, nor do we find any. The statement was an interpretation which may have been incorrect, at least literally, but it is no crime to operate a motor vehicle. Moreover, neither the statement alleged to have been made by the defendant, nor the prosecutor's interpretation of it, had any

relevance to the charge against defendant. He was not charged with speeding, careless and negligent operation, driving under the influence, or any other operation-related offense. Finally, the trial court promptly instructed the jury, relative to the prosecutor's remarks, that the latter's statements and recollections of the testimony could not substitute for facts as they, the jurors, found them to be. Later, in its general charge, the court explained that "operation" was not a part of the charge and was not in the case.

> The expression here is actual physical control of a motor vehicle. Now, it is not operation. How he got there . . . the condition he was in when he started, or when he got there . . . is not one of the horses you have. It's not been presented to you and it is not relevant. Whatever the defendant's condition of sobriety when he left and when he got there is not part of this case.
>
> You are limited solely to what occurred when the officer saw him. That's where the charge rises and falls.

■ Given the irrelevance of the prosecutor's remark as it related to the charge, the absence of any claim of criminal activity contained therein, and the court's prompt instruction to the jury, we hold that defendant was not prejudiced and there was no abuse of discretion in the court's refusal to declare a mistrial.

## IV.

Defendant argues next that the court erred by failing to suppress sua sponte certain evidentiary items which, he contends, were admitted in violation of his constitutional rights. Before addressing these claims, we note as significant that defendant is virtually compelled to resort to a sua sponte argument since he interposed no objection at the time they were introduced.

First, defendant argues that the officer's request that he (defendant) come with him to the cruiser constituted an illegal seizure in violation of his rights under the Fourth Amendment to the United States Constitution. He contends that the officer had "no articulable and reasonable grounds to suspect that he was in violation of the law of the road." Therefore, he concludes, the trial court should have suppressed

sua sponte all the evidence obtained as a result. He argues that the court's failure to do so was plain error, striking at the heart of his constitutional rights, and as such, should be noticed by this court. *State* v. *Kilborn,* 143 Vt. 360, 363, 466 A.2d 1175, 1177 (1983) ; V.R.Cr.P. 52(b).

We do not reach the constitutional issue. The underlying contention, that the officer had no reasonable grounds to suspect the defendant of a violation of the law, is spurious and without merit. At the outset, a police officer has a perfect right to investigate a motor vehicle parked and silent by the side of a highway during the dark hours of the night. Such a vehicle may be abandoned, or stolen, or both. The vehicle may have experienced some mechanical difficulty. If there is an occupant, he may be unconscious, injured, ill, or, for reasons having no relation to illegal activity by anyone, be in need of immediate medical attention or other assistance. It is clear that the officer was within his rights in approaching defendant's vehicle to conduct a preliminary investigation.

Once the officer reached the truck, he found defendant asleep behind the wheel, and had some difficulty in waking him. When he was awake, defendant appeared to be dazed. The officer detected the odor of an alcoholic beverage from the interior of the truck, and there was a half-full bottle of beer on the seat. In short, the officer had more than sufficient and reasonable grounds to believe defendant was under the influence of alcohol, and that a violation of the alcohol-motor vehicle laws was a possibility if not a probability. *Delaware* v. *Prouse,* 440 U.S. 648, 653–54 (1979). There was no error.

Defendant attempts next to raise an issue concerning his statement to the officer that he had been on his way from St. Johnsbury to Newport. He contends that, under *Miranda* v. *Arizona,* 384 U.S. 436 (1966), the State had an obligation to show the statement was voluntary and not elicited as custodial interrogation in violation of his constitutional rights. Once again, there is no call to reach the constitutional issue. We have discussed this same statement in a different context under Section III of this opinion, but the result is the same. The statement was irrelevant; it had no relation to the charge under which he was being tried. Further, defendant made no objection or any effort to cross-examine concerning the state-

ment. The trial court, in its instruction, made doubly clear to the jury that it must confine its deliberations to the elements of the offense charged, which were also explained carefully.

An argument similar to the above is offered by the defendant concerning the statement he made to the officer at the police barracks: "You know something, I wish they never made alcohol. I wish I would have been somewhere else tonight. I could have taken a taxi home."

As we read the record, this statement was not the result of an inquiry or comment by the officer that the latter should have known was reasonably likely to elicit any incriminating response. In fact, the record indicates that the remark was both spontaneous and voluntary. The transcript discloses that, after the officer had finished processing defendant at the barracks, the latter called a friend to ask for a ride home. While waiting for his ride to arrive he made the comment described above as a purely conversational and unsolicited utterance. Defendant refers us to nothing in the record to suggest otherwise. Such freely volunteered statements are not protected by *Miranda*. *Miranda, supra,* at 477–78; *State* v. *Picknell,* 142 Vt. 215, 222, 454 A.2d 711, 713 (1982).

*Affirmed.*