### State of Vermont v. Margaret McNeil

[665 A.2d 51]

No. 94-436

Present: **Allen, C.J., Gibson, Dooley, Morse** and **Johnson, JJ.**

Opinion Filed August 11, 1995

*Scot Kline*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Francis X. Murray*, Burlington, for Defendant-Appellant.

**Dooley, J.** Defendant entered a conditional plea of guilty to a charge of driving under the influence of intoxicating liquor (DUI), 23 V.S.A. § 1201(a)(2), and was granted an interlocutory appeal on the question of whether she was in control of the vehicle "on a highway" within the meaning of § 1201(a)(2).[1] We answer that question in the negative.

A dispatcher for the Yellow Cab Company in Burlington observed defendant's vehicle late at night in the parking lot where the company stores and maintains its cabs. Notified by the dispatcher, a police officer arrived, observed signs consistent with intoxication, and processed defendant for DUI. Defendant consented to a blood test, and her blood-alcohol content (BAC) registered .231%.

Defendant moved to dismiss claiming that the Yellow Cab parking lot was not a "highway" within the meaning of 23 V.S.A. §§ 4(13) and 1201(a). The definition section, § 4(13), states "'Highway,' 'road,' 'public highway' or 'public road' shall include all parts of any bridge, culvert, roadway, street, square, fairground or other place *open temporarily or permanently to public or general circulation of vehicles,* and shall include a way laid out under authority of law." (Emphasis supplied.) The court found that the parking lot was accessible to the adjoining city street through an opening, wide enough to allow one car to pass through, in a chain link fence. On the fence are "no trespassing" signs. The lot has a dirt surface. The cab company treats the lot as private property for business invitees.[2] In

---

[1] 23 V.S.A. § 1201(a)(2) states "A person shall not operate, attempt to operate, or be in actual physical control of any vehicle on a highway . . . when the person is under the influence of intoxicating liquor; . . . ."

[2] Because the taxicabs are radio dispatched, it is rare for customers to seek service at the Yellow Cab facility. By affidavit in April 1994, the owner and manager of the cab company stated:

> Virtually every yellow cab customer is picked up via telephone and dispatch at locations other than 43A Briggs Street, Burlington. There are very isolated situations when the public is dropped off at 43A Briggs Street to take a cab. For example, the last time I recall a customer being dropped off was New Year's Day when the State Police dropped off three customers who needed a ride because their vehicles had become disabled. When customers are dropped off at the 43A Briggs Street site, the vehicles dropping them off do not normally enter the parking lot. Instead these vehicles normally park on the shoulder of Briggs Street, outside of the parking lot along the chain-link

fact, it is used primarily by employees. When vehicles not on cab company business are observed in the lot, the police are called, as in this case. Based on these findings, the court concluded: "[W]e do not have a way that's open to the public."

Despite its conclusion on public access,[3] the court concluded that defendant was in actual physical control of her vehicle on a highway, reasoning:

> Well, clearly the Legislature did not mean public access to be the determinative test. The Court feels it's more appropriate to focus on the nature of the openness and define what general circulation of vehicles can mean. This lot is *open to vehicular traffic* and given the public safety purpose behind the DUI statute and its reference to vehicles on a public highway, the Court does not believe that the Legislature intended a restrictive interpretation, that it intended a liberal interpretation *so as to reach all reasonably anticipated places where vehicles under the control and operation of persons under the influence of alcohol might be. . . .*

> And on the facts presented this morning, the Court will conclude that whether desired by the owner or not that *the lot is open to the general circulation of vehicles* and that the State can make a prima facie case that this lot was a highway as defined by the statute and so the motion to dismiss is denied.

(Emphasis supplied.) The present appeal followed.

Defendant argues that the Yellow Cab parking lot was not "open temporarily or permanently to public or general circulation of vehicles" within the meaning of 23 V.S.A. § 4(13). We have long held that "highway," as used in 23 V.S.A. § 1201, should be given a broad construction. *State v. Trucott*, 145 Vt. 274, 283, 487 A.2d 149, 154 (1984). The definition includes both ways laid out by law, such as a public highway, *id.*, and roads in private ownership. *State v. Paquette*,

---

fence, and the customers walk through the entranceway to the Company's offices, located off the lot.

[3] The dissent argues that we are reviewing a determination of fact which is entitled to deference. We agree with the trial court's factual findings, but decide that they do not support the court's conclusions of law.

151 Vt. 631, 634, 563 A.2d 632, 635 (1989).[4] We have emphasized, however, that "the key . . . [is] whether it is open to the general circulation of the public." *Trucott*, 145 Vt. at 283, 487 A.2d at 155.

We have decided one other parking lot case, *State v. Jarvis*, 145 Vt. 8, 482 A.2d 65 (1984). The parking lot served a bar in Stowe; it had a large opening and accommodated six or seven rows of cars. There was no indication access was restricted in any way, and the arresting officer stated his opinion that the lot was open to the general circulation of the public. We held that the jury could find that the parking lot was a highway. *Id.* at 12–13, 482 A.2d at 68.

The distinction between *Jarvis* and this case is best explained in the Connecticut Supreme Court decision of *State v. Boucher*, 541 A.2d 865 (Conn. 1988), involving operation of a vehicle by an intoxicated person in a Midas Muffler shop parking lot. The Connecticut statute criminalized operation under the influence of alcohol in a parking area if the area is "open to public use." *Id.* at 866. The court defined the term:

> For an area to be "open to public use" it does not have to be open to "everybody all the time." The essential feature of a public use is that it is not confined to privileged individuals or groups whose fitness or eligibility is gauged by some predetermined criteria, but is open to the indefinite public. It is the indefiniteness or unrestricted quality of potential users that gives a use its public character.

*Id.* at 867 (citations omitted). The court concluded that the Midas lot was open to public use because the public was invited to it "either expressly or by implication to come for the purpose of trading or transacting business." *Id.* at 868; see also *People v. Hawkins*, 448 N.W.2d 858, 860–61 (Mich. Ct. App. 1989) (under *Boucher* analysis, shopping center parking lot is "open to the general public" as required by Michigan statute).

■ The parking lot in *Jarvis* was clearly open to the general circulation of the public, as noted in *Boucher.* Just as clearly, the lot in this case does not meet that standard. The lot is used by employees

---

[4] In *State v. Paquette*, the trial court found that the private road was open to the public and the general circulation of vehicles because it was plowed and maintained by the town and provided secondary access to a convenience store and a public school. 151 Vt. 631, 634, 563 A.2d 632, 635 (1989). Here, the trial court concluded that the way was not open to the public. In view of the critical distinction, we do not agree with the dissent that we have impliedly overruled *Paquette*.

to leave their cars, the taxicabs used in the business and persons specifically invited to enter. To the public generally, the message is "no trespassing," a message enforced, as in this case, by requests for police assistance. Unless we are prepared to write public access out of the law, we cannot conclude that this defendant was in control of her vehicle on a highway.

The trial court's rationale could have been adopted by the Legislature to prohibit driving or control of a vehicle while intoxicated wherever it occurs. See, e.g., *State v. McGlone*, 570 N.E.2d 1115, 1117 (Ohio 1991) (Ohio DUI law prohibits driving under the influence "anywhere in the state" and not just on public streets). By including as an element of the offense that the operation or control occur on a "highway" and defining the term as it did, however, the Legislature opted for a more narrow approach.

*Question answered in the negative.*

**Morse, J.**, dissenting. Defendant was found slumped over the wheel of her car in a private parking lot owned by a cab company. In support of its conclusion that the parking lot was not a "highway" for purposes of the DUI statutes, the Court relies on the facts that (1) the lot is unpaved and surrounded by a chain link fence, except for an unobstructed entrance wide enough for only one car; (2) a "No Trespassing" sign restricts use of the lot; and (3) the owners have unauthorized vehicles towed. It is conceded, however, that customers, employees, and others who have business with the cab company are permitted to use the lot.*

The trial court conclusion that the parking lot was a "highway" for purposes of 23 V.S.A. §§ 4(13) and 1201, given our cases on the subject, is correct. Whether the Yellow Cab parking lot was open "to public or general circulation of vehicles" is a mixed question of law and fact, entitled to deference under the clearly erroneous standard. This Court treats the trial court's determination that the lot was a "highway" solely as a question of law, and as though it is not entitled to deference.

Because the primary objective of the DUI statutes is to protect the public from injury, § 4(13) is "'extremely broad.'" *State v. Paquette*, 151 Vt. 631, 633, 563 A.2d 632, 635 (1989) (quoting *State v. Trucott*, 145

*Therefore, this Court's interpretation of the trial court's findings that the lot was closed categorically to the public is inaccurate. Only a portion of the public was not invited to use the lot — those who had no business being there.

Vt. 274, 283, 487 A.2d 149, 154 (1984)). Thus, we have found the word "highway" to include a frozen lake, a gravel rest area immediately adjacent to a traveled portion of a state highway, and significantly, a parking lot accessible to the public. See *State v. Bailey*, 149 Vt. 528, 528–29, 546 A.2d 786, 787 (1988) (citing cases). Here, the parking lot was open to members of the public — customers of the cab company and others who chose to enter; accordingly, it fits within the ambit of § 1201. A different conclusion is not warranted by the limited width of the lot's entranceway, the existence of a "No Trespassing" sign, or the owners' right to have unauthorized vehicles towed. See *Paquette*, 151 Vt. at 633, 563 A.2d at 634; see also *State v. Bromley*, 117 Vt. 228, 230, 88 A.2d 833, 835 (1952) ("The determining factor was not whether the place was private property and not whether the public had the right to use it . . . .").

As the company admitted, even trespassers were allowed to "circulate" there for a reasonable period of time before steps were taken to have them removed. Moreover, I find nothing in the statute to suggest that trespassers are immune from DUI prosecution. Heretofore, no case has turned on such a distinction. If I understand the Court's opinion correctly, every private driveway and road in the state, within the meaning of § 4(13), is not "open" to the public. Thus, *Paquette*, which held that a private road with "private drive" and "no trespassing" signs was within § 4(13), has been impliedly overruled.

The Connecticut case of *State v. Boucher*, 541 A.2d 865 (Conn. 1988), does not support reversing the factual determination in this case. The *Boucher* court specifically held that the Midas lot in issue was open to the public because the public was impliedly invited to come there to transact business. *Id.* at 869. That is this case.

I respectfully dissent and would affirm.